| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL | | |
| ZARIEL MARY GARCÍA<br><br>APELANTE<br><br>V.<br><br>ADMINISTRACIÓN DE CORRECCIÓN Y REHABILITACIÓN<br><br>APELADO | TA2026AP00279 | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Arecibo<br><br>Caso Núm.:<br>C AC2026-0001<br><br>Sobre:<br>*Habeas Corpus*<br>(Ref. Regla 238 PC) |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y el Juez Pérez Ocasio[1]

*Grana Martínez, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Comparece ante nos la señora Zariel Mary García (en adelante la Apelante o señora Garcia) mediante un Recurso de Apelación instado el 18 de marzo de 2026. En su recurso, nos solicita que revoquemos la Sentencia del Tribunal de Primera Instancia emitida el 12 de marzo de 2026, en donde se declaró "No Ha Lugar" la demanda de *Habeas Corpus*.

Por los fundamentos que expondremos a continuación se desestima el recurso por académico. Exponemos el trasfondo fáctico y procesal que acompaña la presente controversia.

I

La señora García indica en su escrito ante este foro que el 4 de marzo de 2026 fue detenida mientras conducía por el policía municipal Kelvin Aguilar Reyes. Sostuvo que en la intervención el agente Aguilar Reyes solicitó la presencia de la División de Homicidios y al lugar llegaron dos agentes de dicha unidad, quienes la trasladaron a ella y a su madre, quien la acompañaba en el vehículo, en una patrulla oficial hacia

---

[1] Conforme a la OATA-2026-036 se designa al Hon. Alberto L. Pérez Ocasio en sustitución de Juez de Apelaciones por Inhibición.

la Comandancia de Arecibo. Afirma que, en ese momento, no existía una orden de arresto en su contra. Así las cosas, relata que la intervención fue aproximadamente a las 2:00 p.m. y antes de las 5:30 p.m., el Ministerio Público presentó ante el Tribunal una Moción Solicitando Certificación de Testigo Material. Esto con el propósito de obtener una orden de arresto en su contra y obligarla a comparecer como testigo de cargo contra el Sr. José J. Castro Custodio, en los casos de asesinato y violación a la Ley de Armas (C1VP2026-0133 al 0135) que pesaban contra éste y los cuales se encontraban pendientes de vista preliminar. Indicó que tras evaluar la prueba y conforme a la Regla 238 de Procedimiento Criminal, el Tribunal determinó causa justificada para creer que la testigo no comparecería a declarar y le impuso una fianza de $50,000.00 para garantizar su presencia en la vista preliminar señalada para el 6 de marzo de 2026. Al no prestar la fianza impuesta, el tribunal ordenó su ingreso en una institución penal.

Por tal razón, presentó Demanda Solicitando "*Habeas Corpus*". El foro primario celebró la vista de Habeas Corpus y la declaró No Ha Lugar, determinando que la señora García no había sido arrestada y tampoco se había violentado el debido proceso de ley.

Inconforme con tal proceder, la señora García acude ante este foro revisor y plantea que el Tribunal de Primera Instancia cometió los siguientes errores.

1) Erró el Tribunal de Primera Instancia al concluir que la detención realizada por los agentes del orden público a la Sra. Zariel M. García no constituía un arresto ilegal.

2) Erró el Tribunal de Primera Instancia al declarar NO HA LUGAR una violación al debido proceso de ley, tanto en su vertiente sustantiva como procesal, luego de que el Estado realizara un arresto ilegal para posteriormente requerir un arresto amparado en la Regla 238 de Procedimiento Criminal.

II

La Apelante plantea que la Regla 238 de Procedimiento Criminal, no contempla mecanismos posteriores al arresto para evaluar e impugnar su legalidad, restringiéndose a solo dos vías: el pago de la fianza o la prestación de deposición para obtener la libertad. De manera que el arrestado carece aquí de recursos inmediatos para objetar la validez de la detención o las circunstancias que lo llevaron ante el Tribunal.

Puntualiza que no recurre al *Habeas Corpus* para impugnar directamente la Regla 238 de Procedimiento Criminal, ni el testimonio de los agentes que motivó la orden de arresto, tampoco busca impugnar la fianza impuesta. Recurre basándose en la violación al debido proceso de ley, tanto sustantivo como procesal tras las acciones del Estado que la arresto ilegalmente.

La señora García sostiene que en su caso no aplica la Regla 11 de Procedimiento Criminal que permite a un funcionario del orden público efectuar un arresto sin orden. Puntualiza que se trata de varios supuestos: el primero, cuando el funcionario tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. El segundo, cuando la persona arrestada hubiese cometido un delito grave (felony), aunque no en su presencia y el tercero, cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (felony), independientemente de que dicho delito se hubiere cometido o no en realidad.

Sostiene que en todos estos supuestos tienen el denominador común de que hablan de delitos graves o menos graves. Por tal razón, a su entender, la Regla 238 de Procedimiento Criminal requiere una orden judicial previa.

Su contención es que el Estado no debe utilizar mecanismos contrarios a derechos ilegales o inconstitucionales para llevar las personas ante la jurisdicción del tribunal.

Para sostener su reclamo, aduce que, en *Pueblo v. Calderón Diaz*, 156 DPR 549 (2002), el Tribunal Supremo de Puerto Rico reconoció que no se puede permitir que la policía arreste a cualquier ciudadano en cualquier momento y en cualquier lugar a base de la más mínima sospecha. Tienen que haber circunstancias excepcionales que justifiquen la existencia de motivos fundados para efectuar un arresto sin orden. Un recuerdo, sin más, no establece el motivo fundado, sino que el mismo más bien equivale a una sospecha. El mero hecho o la mera sospecha infundada no constituye motivo fundado.

Finalmente, afirma que quedó establecido que no existía orden de arresto en contra de la apelante, como tampoco existían motivos fundados amparados en la Regla 11 de Procedimiento Criminal para su detención. El Estado invirtió el procedimiento al no obtener una orden de arresto previa para eventualmente diligenciarla.

A su entender, el hecho de estar bajo custodia del Estado sin libertad de movilidad constituye un arresto, independientemente de que se tenga o no acceso a un celular o no se utilicen esposas. Advierte que un procedimiento amparado en la Regla 238 no debe ser utilizado para convalidar un arresto a posteriori, tal como se realiza bajo la Regla 6 de Procedimiento Criminal, cuando el arresto es efectuado conforme a la Regla 11 de Procedimiento Criminal.

Por último, señala que en la vista de Habeas Corpus el foro primario mantuvo la carga de la prueba respecto a la ilegalidad del arresto sobre la apelante, lo que llevó al Ministerio Público a no presentar testigos para demostrar la legalidad del arresto, la carga de la prueba nunca fue invertida al Estado. Razón por la cual se encuentra sumariada ilegal e involuntariamente en una institución carcelaria del Estado.

Por su parte, el Pueblo de Puerto Rico, compareció representado por la Oficina del Procurador General, mediante *Solicitud de desestimación y escrito en cumplimiento de orden.* En relación con la solicitud de desestimación, señaló varias fallas en el recurso presentado, entre ellas, que no incluyó en el apéndice de su recurso los documentos necesarios para colocar a este Honorable Tribunal en posición de evaluar sus planteamientos y su jurisdicción, tales como copia de la notificación de la Sentencia apelada ni de los documentos que originaron su encarcelación, como por ejemplo, la moción presentada por el Estado en solicitud de que la certificaran como testigo material, la declaración jurada anejada a ésta y las minutas de las vistas preliminares. Para el Procurador, la ausencia de tales documentos esenciales, no permiten a este foro conocer todos los hechos que dieron base a la orden de arresto en su contra, como testigo material ni constatar nuestra jurisdicción, motivo suficiente para desestimar el recurso.

En cuanto a los méritos sostiene que la apelante no establece razones suficientes que ameriten la revocación de la Sentencia, la cual se presume válida. El Estado sostiene que la apelante no impugna el testimonio de los agentes que dio base a su arresto al amparo de la Regla 238 de Procedimiento Criminal, 34 LPRA Ap. II, tampoco la orden válidamente emitida al amparo de dicha regla. Aduce que el recurso presentado se ciñe a cuestionar si la apelante fue arrestada antes de ser llevada ante el tribunal para la vista al amparo de la mencionada orden y, de entenderse que fue arrestada, si ese arresto fue uno ilegal. En cuanto a esto último, sostiene que el testimonio de la señora García y su madre en la vista de Habeas Corpus, surgió que no fueron privadas de su libertad. Detalló que la señora García no estaba esposada, no estaba custodiada por agentes en el tribunal, estaba utilizando libremente su celular y mantenía comunicación con su madre. Además, el testimonio de ambas no resultó completamente creíble al foro recurrido, ya que con

sus declaraciones demostraron que mentían. En su favor también sostiene que desde que los agentes lograron dar con la apelante hasta que se celebró la vista que resultó en su arresto, solo transcurrieron tres horas por lo que el Estado actuó con premura al obtener la orden al amparo de la Regla 238, supra, para garantizar la comparecencia de la peticionaria al procedimiento criminal sobre el cual es testigo material.

En cuanto a los hechos que definen a la apelante como testigo material, el Procurador relata que como parte del procesamiento criminal del Sr. José J. Castro Custodio, caso núm. C1VP2026-0133 al 0135, por el delito de asesinato, entre otros, el 4 de marzo de 2026 el Ministerio Público presentó una Moción solicitando certificación de testigo material. En la moción explicó que la señora García era testigo material de los hechos y solicitó una orden de arresto para asegurar su comparecencia a la vista preliminar a celebrarse contra el señor Castro Custodio, ya que existían razones fundadas para creer que la testigo se estaba negando a comparecer. Junto con esta moción, incluyó una declaración jurada del Agte. Edwin Calderón Torres en la cual detalló las múltiples gestiones que había realizado para localizar a la señora García, citarla a la vista preliminar y que habían resultado infructuosas. Sobre el momento de la intervención, detalló en la declaración que esa tarde del 4 de marzo de 2026, un policía municipal había detenido un vehículo en el que viajaba la apelante y se le solicitó que acompañara al agente Calderón Torres a la División de Homicidios para resolver el problema de su comparecencia al tribunal. Sostuvo que la vista ante el foro primario se celebró esa misma tarde con el testimonio del agente Calderón Torres, quien detalló las gestiones que realizó para que la testigo compareciera a los señalamientos de la vista preliminar y cómo éstas resultaron infructuosas. Particularmente señaló que la señora García no contestaba las llamadas, no estaba en su residencia; y su madre, con quien presuntamente residía, indicaba al agente que desconocía su paradero,

lo cual quedó desmentido cuando el policía municipal las encontró juntas en el automóvil. Por su parte, la señora García alegó que las llamadas no entraron a su celular, que se había ido a quedar con una amiga, pero que había regresado a su residencia. Luego expresó que había estado hospitalizada, pero no pudo precisar la fecha ni documentación sobre esto. En fin, el Procurador sostuvo que luego de escuchar los testimonios, el foro primario emitió una Resolución y Orden, en la que concluyó que había causa justificada para creer que la señora García dejaría de comparecer y, al amparo de la Regla 238 de Procedimiento Criminal, supra, le impuso una fianza de $50,000 para garantizar su comparecencia. Al no prestar la fianza, la señora García fue ingresada a prisión el 4 de marzo de 2026.

A raíz de la presentación de su Demanda solicitando "Habeas Corpus" el Tribunal de Primera Instancia celebró una vista el 12 de marzo de 2026 en la cual declararon la señora García y su madre, la Sra. María García González. Ambas declararon que los agentes de homicidios estaban buscando a la apelante porque no había comparecido al tribunal, que luego el agente Calderón Torres las llevó en diferentes patrullas a la comandancia. Indicaron que no fueron esposadas y tenían sus celulares, pero que no podían irse de la comandancia. La madre pudo hablar con su abogado e irse, pero su hija no, quien permaneció detenida hasta la vista urgente celebrada el 4 de marzo a las 5:30 p.m. Afirmó el Procurador que el tribunal concluyó que la señora García no fue arrestada ilegalmente. Pues según el foro primario "[s]egún surge de la prueba, la demandante es testigo del Ministerio Público. Las gestiones de los policías, así como las del Ministerio Público, estaban encaminadas a garantizar que pudiese ser citada para comparecer al tribunal, no para acusarla de delito alguno". Asimismo, el foro determinó que ambas testigos declararon de forma mendaz, pues manifestaron que la madre no conocía el paradero de la apelante, lo cual quedó desmentido cuando

las encontraron juntas durante la intervención del policía municipal. El Tribunal hizo constar que en la vista del 4 de marzo la apelante no estaba esposada, inclusive estaba sentada en un banco del Tribunal sin tener ningún agente de la policía a su lado. Por lo que concluyó que no estaba ante un arresto ilegal en violación al debido proceso de ley.

El Procurador sostiene que el derecho a recurrir "queda condicionado a que las partes observen rigurosamente el cumplimiento de las disposiciones reglamentarias establecidas por nuestro ordenamiento jurídico sobre la forma, el contenido, la presentación y la notificación de los recursos, incluyendo lo dispuesto en los Reglamentos del Tribunal de Apelaciones y del Tribunal Supremo". *Hernández Jiménez v. AEE*, 194 DPR 378, 382-383 (2015). Razón por la cual, las disposiciones reglamentarias sobre los recursos que se presentarán ante el Tribunal de Apelaciones se deben observar rigurosamente. *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 290 (2011).

La Regla 16(E)(1) del Reglamento del Tribunal de Apelaciones, supra, que establece que un recurso de apelación en casos civiles incluirá un apéndice con lo siguiente: ...(b) la sentencia del Tribunal de Primera Instancia cuya revisión se solicita y la notificación del archivo en autos de copia de esta; ... (d) toda resolución u orden, y toda moción o escrito de cualesquiera de las partes que forme parte del expediente original en el Tribunal de Primera Instancia, en las cuales se discuta expresamente cualquier asunto planteado en el escrito de apelación, o que sean relevantes a este; (e) cualquier otro documento que forme parte del expediente original en el Tribunal de Primera Instancia y que pueda serle útil al Tribunal de Apelaciones para resolver la controversia.

Afirma que, ante un apéndice incompleto, como en el caso de epígrafe, procede la desestimación del recurso en la medida en que no permite a este Augusto Foro evaluar cabalmente la controversia y

constatar su jurisdicción. *Vázquez Figueroa v. ELA*, 172 DPR 150 (2007); *Córdova Ramos v. Larín Herrera*, 151 DPR 192, 197 (2000).

Puntualiza que el apéndice del recurso presentado no cuenta con copia de: (1) la notificación de la Sentencia; (2) la Moción solicitando certificación de testigo material con la declaración jurada del agente Calderón Torres; y (3) minutas de las vistas preliminares. Manifiesta que la ausencia de todos estos documentos impide a este Honorable Foro conocer lo que originó la petición de declaración de la señora García como testigo material y orden de su arresto, así como las múltiples gestiones realizadas por el agente Calderón Torres para poder dar con el paradero de la peticionaria. Además, la ausencia de la notificación de la Sentencia apelada es indispensable para que este Honorable Tribunal pueda determinar su jurisdicción.

En cuanto a los señalamientos de error señalados por la apelante, el Procurador afirma que, al momento de la celebración de la vista en cuestión, la señora García no estaba arrestada, como correctamente concluyó el foro recurrido.

Arguye que el arresto está definido en nuestro ordenamiento jurídico como el acto de poner a una persona bajo custodia en los casos y del modo que la ley autoriza. Podrá hacerse por un funcionario del orden público o por una persona particular. El arresto se hará por medio de la restricción efectiva de la libertad de la persona o sometiendo a dicha persona a la custodia de un funcionario. El arrestado no habrá de estar sujeto a más restricciones que las necesarias para su arresto y detención, y tendrá derecho a que su abogado o su familiar más cercano lo visite y se comunique con él. Regla 4 de Procedimiento Criminal, supra.

De igual manera, detalla que la Regla 238 de Procedimiento Criminal, supra, permite el arresto de un testigo [s]i cualquiera de las partes estableciere, mediante declaración jurada, que existe fundado

temor de que algún testigo en una causa criminal dejará de comparecer a declarar a menos que se le exija fianza, el magistrado que actúa en la investigación preliminar, o el tribunal con jurisdicción sobre la causa, ordenará al testigo que preste fianza, por la cantidad que estimare suficiente, y de no prestarla ordenará su arresto hasta tanto prestare fianza, o se le tomare una deposición. El documento de fianza cumplirá los requisitos que se fijan en estas reglas a las fianzas para la libertad provisional del acusado, y garantizará la comparecencia del testigo, ante cualquier sala del tribunal en que el juicio o juicios se celebren, o a la vista preliminar, en la fecha para la cual se le citare. De no comparecer el testigo luego de ser citado, se confiscará la fianza siguiendo el procedimiento prescrito en los casos de fianza para la libertad provisional del acusado.

En fin, y en síntesis, el Procurador afirma que el arresto se efectuó el 4 de marzo de 2026 a las 5:30 después de la vista urgente, pues este sostiene que la señora García no estaba arrestada cuando fue llevada a la mencionada vista. Tampoco estaba custodiada por agentes en el tribunal, no estaba esposada, tenía acceso a su celular y estaba haciendo uso de éste, sin que los agentes del orden público se lo impidieran. Para el Procurador desde que los agentes del orden público dieron con la señora García hasta que se celebró la vista, solo transcurrieron tres horas. Además, no habiendo sido impugnado el testimonio del agente, éstos tenían razones suficientes para temer que la señora García no comparecería a declarar en el caso criminal contra el señor Castro Custodio. Una vez los agentes dieron con la peticionaria, activaron de inmediato el mecanismo de la Regla 238, supra, para impedir que continuara escondiéndose y así garantizar su comparecencia. Por lo tanto, no hubo una detención de la apelante hasta que se emitió la orden del 4 de marzo de 2026, en la que se le impuso una fianza que no pudo prestar.

Así las cosas, y en aras de cumplir con la política pública de acceso judicial, este foro concedió un término a la apelante para presentar el apéndice y colocarnos en posición de resolver el asunto. De igual manera, solicitamos *motu proprio* la regrabación de la vista de *Habeas Corpus*, la cual recibimos el 16 de abril. Estando este tribunal en posición de expresarse sobre el arresto ilegal y en violación al debido proceso de ley de la señora Garcia, compareció nuevamente el Procurador General solicitando la desestimación del recurso por academicidad. Sostuvo que la señora García ya no estaba encarcelada al amparo de la Regla 238 de Procedimiento Criminal, supra, sino que había sido convicta por desacato criminal, por lo que cumplía una condena de seis meses que el primario le impuso. Esto como parte de la continuación de la vista preliminar celebrada el 10 de abril de 2026 en la cual al llamarla a testificar ésta incurrió en una conducta contumaz, irrespetuosa, sin seguir instrucciones, indispuesta para responder las preguntas del Ministerio Público e irreverente con el Tribunal. Por tales razones, el Procurador sostuvo que la controversia que había dado base al *Habeas Corpus* se había tornado académica.

Por su parte la señora García, se opuso a la desestimación. Sostuvo que las tres excepciones a la doctrina de academicidad; (1) cuando se plantea ante el foro judicial una cuestión recurrente o susceptible de volver a ocurrir y que tienda a evadir la revisión judicial; (2) cuando la situación de hechos ha sido modificada por el demandado, pero el cambio no aparenta ser permanente; y (3) cuando se tornan académicos algunos aspectos de la controversia, pero subsisten consecuencias colaterales vigentes, convergen en la situación de hechos ante nuestra consideración. La señora Garcia afirma que, si resolviésemos a su favor, podría levantar defensas de efectos colaterales en el caso de Desacato Criminal, resuelto por el foro primario de forma sumaria. También plantea que la apelación presentada es un recurso

independiente y de índole civil y que resulta necesario que este foro se exprese sobre los errores en el recurso. Además, y en lo que es el argumento más fuerte, plantea el arresto ilegal para llevar a una persona ante la jurisdicción del tribunal, al amparo de la Regla 238 de Procedimiento Criminal, es una situación susceptible de repetición. Nos invita a aprovechar la ocasión y exponer cuál sería el debido proceso de ley en su vertiente procesal toda vez que entiende que el Estado incorrectamente invirtió el procedimiento. Alude la apelante que la situación en la que se vio envuelta, el arresto ilegal, podría afectar a cualquier ciudadano y por ser un asunto recurrente, de naturaleza efímera y, por consiguiente, capaz de eludir la revisión judicial deberíamos atenderlo.

III

### A. Arresto

El Art. II Sec. 7 de la Constitución de Puerto Rico establece que "[n]inguna persona será privada de su libertad o propiedad sin un debido proceso de ley". Art. II, Sec. 7, Const. ELA [Const. PR], LPRA, Tomo 1, ed. 2008, pág. 296. Esta sección es la raíz de la garantía de los derechos de los individuos ante una intervención impermisible por parte del gobierno. *Pueblo v. Pérez Rivera*, 186 DPR 845, 861 (2012); *Pueblo v. Román Martir*, 169 DPR 809, 821-822 (2007).

El arresto se ha definido como "la restricción efectiva de libertad de una persona". D. Nevárez Muñíz, *Sumario de Derecho Procesal Penal Puertorriqueño*, 10.a ed. rev., San Juan, Ed. Instituto para el Desarrollo del Derecho, 2014, pág. 57. La Regla 4 de Procedimiento Criminal establece que:

> Un arresto es el acto de poner a una persona bajo custodia en los casos y del modo que la ley autoriza. Podrá hacerse por un funcionario del orden público o por una persona particular. El arresto se hará por medio de la restricción efectiva de la libertad de la persona o sometiendo a dicha persona a la custodia de un funcionario. El arrestado no habrá de estar sujeto a más restricciones que las necesarias

para su arresto y detención y tendrá derecho a que su abogado o su familiar más cercano lo visite y se comunique con él. 34 LPRA Ap. II, R. 4.

La custodia policiaca no se limita solo a la detención en el cuartel, si no que incluye cualquier otro tipo de detención, incluyendo el propio hogar de los ciudadanos al este encontrarse incomunicado mientras se le interroga. *Pueblo v. Tribunal Superior*, 97 DPR 199, 201 (1969).

La determinación de si un policía ha arrestado o no a un ciudadano, no puede depender del elemento de que el agente de orden público le haya informado o no al detenido de que será puesto bajo arresto. Tampoco puede depender de que el policía haya manifestado su intención de que la intervención con el ciudadano sea con el propósito de arrestar a un sospechoso o que así fuera entendido por el detenido. *Pueblo v. Pacheco Báez*, 130 DPR 664, 669 (1992). Estos elementos de carácter subjetivos, por sí solos, no son suficiente para configurar un arresto. *Íd.* Por último, el Tribunal esbozo que *"[s]i se está o no bajo arresto depende de si al hacer un análisis objetivo de la totalidad de las circunstancias que rodean el incidente se puede concluir que una persona prudente y razonable, inocente de todo delito, hubiera pensado que no estaba en libertad de marcharse"*. *Íd.* (Énfasis suplido). Por consiguiente, "[s]i de la totalidad de las circunstancias se puede concluir que la persona no está en libertad de marcharse, se considera que tiene una restricción efectiva de libertad". D. Nevárez Muñiz, *op cit*, pág. 57.

En *Pueblo v. Millan Pacheco*,182 DPR 595 (2011) el acusado fue buscado en su apartamento en el Residencial Perla del Caribe en Ponce por tres (3) agentes de la policía en dos (2) vehículos oficiales siendo este trasladado a la comandancia de la Policía. De la opinión surge que el Ministerio Publico alegó que "no se le había restringido su libertad, ya que podía irse del cuartel en cualquier momento". *Íd.*, pág. 622. El Tribunal Supremo adoptó como norma los siguientes requisitos para

identificar si los agentes del orden público mitigaron la atmósfera de restricción o custodia. Los requisitos son los siguientes:

> La policía le dijo al sospechoso que él o ella se encontraba libre para poderse ir cuando quisiera, le advirtieron que no estaba obligado a contestar sus preguntas, llanamente le dijeron que no se encontraba arrestado, la persona no se encontraba restringida en sus movimientos durante la entrevista, y la persona fue la que inicialmente hizo contacto con la Policía o voluntariamente consintió al pedido de ésta. *Íd.*, pág. 623.

Los antes mencionados criterios de por sí solo no son concluyentes. *Íd.* Estos elementos tienen que ser analizados a la luz de lo que pensaría una persona prudente y razonable. *Íd.* El Tribunal Supremo aplicando estos criterios en el caso de *Pueblo v. Millán Pacheco,* supra*,* entendió que una persona prudente y razonable pudiera entender que su libertad de acción le había sido restringida.

### B. Testigo Material

Un testigo material es un "individuo que tiene información única a cerca de un crimen que es beneficioso ya sea para la defensa o el ministerio público". *S.M. Studnicki & J.P. Apol, Witness Detention and Intimidation: The History and Future of Material Witness Law*, 76 St. John's L. Rev. 483, 485 (2002).

La Regla 238 de Procedimiento Criminal, 34 LPRA Ap. II expone que:

> Si cualquiera de las partes estableciere, mediante declaración jurada, que existe fundado temor de que algún testigo en una causa criminal dejara de comparecer a declarar a menos que se le exija fianza, el magistrado que actúa en la investigación preliminar, o el tribunal con jurisdicción sobre la causa, ordenara al testigo que preste fianza por la cantidad que estimare suficiente, y de no prestarla ordenara su arresto hasta tanto prestare fianza, o se le tomare una deposición. El documento de fianza cumplirá los requisitos que se fijan en estas reglas a las fianzas para la libertad provisional del acusado y garantizará la comparecencia del testigo, ante cualquier sala del tribunal en que el juicio o juicio se celebren, o la vista preliminar, en la fecha para la cual se le citare. De no comparecer el testigo luego de ser citado, se confiscará la fianza siguiendo el

procedimiento prescrito en los casos de fianza para la libertad provisional del acusado.[2]

El Tribunal Supremo de Puerto Rico no ha tenido la oportunidad de interpretar la Regla 238 de Procedimiento Criminal, *supra*. Por lo cual, no existe una doctrina elaborada en torno a dicha regla. Esta regla tiene su procedencia en los Art. 40, al 42 y 412 del Código de Enjuiciamiento Criminal de Puerto Rico, la Regla 46 (b) de Procedimiento Criminal Federal y de la sección 1332 de las Reglas de Procedimiento Criminal del Estado de California.[3] Como parte de nuestra investigación sobre la regla que permite que se arresten testigo so pena de la prestación de una fianza, tuvimos que acudir a fuentes secundarias y persuasivas para poder identificar como se ha desarrollado esta figura en la jurisprudencia federal a nivel de los circuitos apelativos como de la estatal.

Dentro de las escasas expresiones que ha hecho nuestro máximo foro local sobre la Regla 238 tenemos el caso de *Pueblo v. Vélez Díaz*, 105 DPR 386, 390 (1976), en la cual el Tribunal Supremo mediante un *dictum* expuso que se podía utilizar los *mecanismos de emergencia* de la Regla 238 de Procedimiento Criminal para que un testigo de cargo de nacionalidad japonesa se asegurara de su comparecencia en Puerto Rico, debido a que en ocho (8) días saldría de la jurisdicción de Puerto Rico y no regresaría más. (Énfasis suplido).

A distinción de su contraparte federal, entiéndase la Regla 46(b) de Procedimiento Criminal Federal, nuestra regla procesal no exige el elemento de que sea impráctico asegurar la comparecencia de una persona mediante una *subpoena*. La antes mencionada Regla, textualmente establece que *"[i]f it appears from an **affidavit** filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence*

---

[2] El Art. II Sec. 11 de nuestra Constitución dispone que *"[l]as fianzas y las multas no serán excesivas"*. Énfasis suplido.

[3] Las secciones pertinentes al procedimiento penal del estado de California están codificadas dentro de la darte dos (2) de su Código Penal de la sección 681 a la 1620.

*by subpoena,* ***a judicial officer may order the arrest of the person***".
18 USC sec. 3144. (Énfasis, subrayado y negrillas suplidos). Por consiguiente, nuestra Regla 238 de Procedimiento Criminal, *supra,* aunque inspirada en la Regla 46(b) de Procedimiento Criminal Federal es una más restrictiva, debido a que no brinda a un testigo la oportunidad de que previo a que sea arrestado primero se le cite mediante una *subpoena* y comparezca.

Ahora bien, para que se pueda arrestar a una persona mediante la regla federal primero tiene que haber una declaración jurada en la cual se exponga el temor fundado de que el testigo no comparecerá. La persona que realice la declaración jurada tiene que demostrar que tiene conocimiento personal del testimonio del testigo, ya sea el agente del orden público o la fiscalía. *U.S. v. Awadallah,* 349 F.3d 42, 66 (2do Cir. 2003).[4]   Una vez se realice la declaración jurada, el juez tendrá que examinarla bajo el estándar de causa probable de que el testimonio que se intentará presentar es uno material. *Bacon v. US,* 449 F.2D 933, 943 (9no. Cir. 1971).  Una vez se cumple con este criterio el juez podrá emitir una orden *ex parte* para que se traiga al testigo al tribunal y se ordene su arresto en el caso de no prestar la fianza o se le tome una deposición. Hay que resaltar que, en el caso de *Bacon v. US, supra,* el Tribunal de Apelaciones del Noveno Circuito no resolvió si un testigo material puede ser arrestado y detenido sin una orden. [5]

No obstante, a nivel estatal el Tribunal de Apelaciones de Oregon confirmó que se tiene que cumplir con los requisitos estatutarios para poder arrestar a un testigo material, entiéndase que la orden de arresto sea emitida por un juez.  En este caso, el fiscal de distrito no buscó una

---

[4] En el caso de *U. S. v. Awadallah,* 349 F.3d 42, 66 (2003) resuelto por el Segundo Circuito del Tribunal de Apelaciones de los Estados Unidos estableció que un agente del *Federal Bureau of Investigation* (FBI) que trabajó de cerca con la fiscalía en una investigación de gran jurado puede satisfacer el requisito de conocimiento personal.
[5] Una cita directa de las expresiones del Noveno Circuito son las siguientes *"We do not decide whether, if ever, a material witness may be arrested and detained with probable cause but without a warrant".* *Id.,* pág. 943.

autorización judicial y la policía acudió a la casa del testigo material y se lo llevaron en custodia. *State v. McKendall*, 584 P.2d 316, 319 (1978).[6]

Como mencionamos anteriormente, la Regla 238 de Procedimiento Criminal, *supra,* también encuentra procedencia en la sección 1332 de Procedimiento Criminal de California.[7] En la actualidad ambas reglas procesales contienen la misma esencia, pero las Reglas Procesales de California han tenido una serie de enmiendas en el año 1987, en la cual se ha extendido mayores garantías procesales a los testigos. Como por ejemplo, los testigos materiales tienen derecho a una revisión automática de la orden de arresto en un plazo de dos (2) días.[8] En el caso de que no le favorezca esta determinación el testigo tendrá derecho a la revisión de la orden en un plazo de (10) diez días.[9]  Atendiendo la preocupación de que la regla sobre testigos materiales concede total libertad de acción al Gobierno y a los agentes del orden público, quienes podrían abusar de ella. S.M. Studnicki & J.P. Apol, op cit. 486.

---

[6] Este caso es revocado en parte por *State v. Lopez*, 936 P.2d 386, 388 (Or. 1997). No obstante, la revocación fue por otros fundamentos, en lo que respecta a el testigo material sigue vigente.

[7] La Sección 1332 del estatuto de California dispone que:

(a) Notwithstanding the provisions of Sections 878 to 883, inclusive, when the court is satisfied, by proof on oath, that there is good cause to believe that any material witness for the prosecution or defense, whether the witness is an adult or a minor, will not appear and testify unless security is required, at any proceeding in connection with any criminal prosecution or in connection with a wardship petition pursuant to Section 602 of the Welfare and Institutions Code, the court may order the witness to enter into a written undertaking to the effect that he or she will appear and testify at the time and place ordered by the court or that he or she will forfeit an amount the court deems proper.

(b) If the witness required to enter into an undertaking to appear and testify, either with or without sureties, refuses compliance with the order for that purpose, the court may commit the witness, if an adult, to the custody of the sheriff, and if a minor, to the custody of the probation officer or other appropriate agency, until the witness complies or is legally discharged.

(c) When a person is committed pursuant to this section, he or she is entitled to an automatic review of the order requiring a written undertaking and the order committing the person, by a judge or magistrate having jurisdiction over the offense other than the one who issued the order. This review shall be held not later than two days from the time of the original order of commitment.

(d) If it is determined that the witness must remain in custody, the witness is entitled to a review of that order after 10 days.

(e) When a witness has entered into an undertaking to appear, upon his or her failure to do so the undertaking is forfeited in the same manner as undertakings of bail. Cal. Penal sec. 1332.

[8] *Íd.*

[9] *Íd*

El Tribunal de Apelaciones de California en *In re D.W.* 123 Cal. App. 4th 491, 498 (Ca. 2004) ha expuesto que a base de la sección 1332 del Código Penal, los testigos materiales deben tener oportunidad de ser escuchados según lo dispone la Constitución Federal y Estatal de California, la que establecen que no se puede privar la libertad de una persona sin el debido proceso de ley. Dado al riesgo que tiene el testigo de perder su libertad física, el requisito de debido proceso de ley en torno a la oportunidad de ser escuchado no se cumple a menos que haya un abogado en la vista de fianza. *Íd.* Asimismo, existe una importancia de que exista un abogado en esta etapa, debido a que el estatuto brinda la alternativa de que el testigo material se someta a una deposición con el propósito de no prestar una fianza o acudir a la cárcel. *In Re Class Action* 612 F. Supp. 940, 946 (W.D. Tex. 1985). Sin la asistencia del abogado resultaría improbable que el testigo tenga conocimiento de las Reglas de Procedimiento Criminal y pueda levantar este reclamo. *Íd.*

La detención de testigos materiales debe ser un proceso de carácter excepcional y raramente utilizado, debido a que "*is easier to arrest an individual as a material witness than a criminal defendant since there is no require showing of probable cause that the witness has committed a crime*". S.M. Studnicki & J.P. Apol, *supra,* pág. 486.

Ahora bien, y por último, la Regla 94 de Procedimiento Criminal, supra reconoce que si el testigo estuviese bajo arresto por no haber prestado fianza para comparecer a un juicio o a una vista, el tribunal, a solicitud escrita del testigo arrestado notificada a las partes, podrá ordenar que se tome su deposición. Luego de ser suscrita la deposición, el tribunal podrá poner en libertad al testigo. 34 LPRA Ap. II, R. 94.

### C. Academicidad

El Tribunal Supremo ha señalado que los tribunales solo pueden adjudicar aquellos casos que son justiciables. *Asoc. Foto Periodistas v. Rivera Schatz,* 180 DPR 920, 932 (2011). Además, los foros adjudicativos

solo deben intervenir en controversias reales y vivas, en las cuales las partes tengan intereses en contra y busquen obtener un remedio que tenga una consecuencia sobre la relación jurídica. *Íd.* Véase, además, *Super Asphalt v. AFI y otro*, 206 DPR 803, 815 (2021). No se considera justiciable una controversia cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica*;* (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro. Id.

Ahora bien, la academicidad es una de las vertientes que sostiene la ausencia de capacidad de obrar del foro judicial. La academicidad ha sido definida como un fallo que se trata de obtener de una "controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes que este haya sido reclamado, o una sentencia sobre un asunto, que, al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente". *Asoc. de Periodista v. Gonzalez*, 127 DPR 704, 720 (1991).

La doctrina de academicidad también incluye la situación de que cumplido todos los elementos del concepto de justiciabilidad los cambios relacionados a los hechos o aspectos judiciales que surgen dentro del trámite judicial de una controversia hacen ficticia su solución. *El Vocero v. Junta de Planificación*, 121 DPR 115, 124 (1988). Los fundamentos que apoyan la antes mencionada doctrina son: (1) prevenir el uso innecesario de los recursos del tribunal (2) asegurar que existe una controversia contenciosa entre las partes y (3) evitar un precedente innecesario. *Íd.*

Sin embargo, el Tribunal ha reconocido unas excepciones a la doctrina de academicidad. Estas son las siguientes: (1) una cuestión recurrente o susceptible de volver a ocurrir; (2) cuando el demandado ha cambiado su conducta, pero no tiene visos de permanencia y (3) cuando

existen consecuencias colaterales. *UPR v. Laborde*, 180 DPR 253, 282 (2010); *El Vocero v. Junta de Planificación, supra*, pág. 125. En cuanto a estas excepciones el adjudicador ha de evaluar **los eventos anteriores, próximos y futuros**, antes de determinar si la controversia entre las partes sigue viva y subsiste con el tiempo". *Buxó Santiago v. ELA et als.*, 2024 TSPR 130, 215 DPR__(2024).

Específicamente en cuanto a la excepción que contempla la existencia de consecuencias colaterales en *RBR Const., S.E. v. A.C.*, 149 DPR 836, 847 (1999), el Tribunal Supremo de Puerto Rico resolvió que el recurso de revisión judicial no se tornaba académico por haberse terminado cierta obra cuya adjudicación estaba siendo impugnada. Esto por entender que la controversia era susceptible de repetición y que, además, tenía importantes consecuencias colaterales para el interés público en proteger los fondos del pueblo de Puerto Rico.

Recientemente el Tribunal Supremo en *Buxó Santiago v. ELA et. als.,* supra, reiteró que "una de las maneras en las cuales un caso evade la **academicidad** surge cuando de la controversia mayor emanan consecuencias colaterales que aún pueden tener repercusiones de no adjudicarse el caso. Es decir, que el caso es susceptible de ser resuelto aún "cuando aspectos de la controversia se tornan académicos, pero **persisten controversias colaterales de ésta que tienen vigencia y actualidad**".

IV

El 11 de marzo de 2026, la Apelante presentó una Demanda de Habeas Corpus en contra la Administración de Corrección y Rehabilitación. Esto, debido a que el 4 de marzo de 2026, en el Municipio de Hatillo la Apelante fue detenida por el agente Kelvin Aguilar Reyes. Luego, dicho agente llamó a los agentes de homicidios el cual se llevaron a la Apelante en una patrulla oficial.

El mismo, 4 de marzo de 2026, el Agente Edwin Calderón Torres (agente distinto al que la detuvo) realizo una declaración jurada según lo exige la Regla 238 de Procedimiento Criminal, *supra*. Además, se solicitó por parte del Ministerio Publico que se certificara a la Apelante como testigo material del caso. Todo esto posterior a que detuvieran a la apelante junto a su madre y las invitaran a pasar a la Comandancia donde conforme las alegaciones del Estado, no estaba arrestada porque "no estaba esposada, no estaba custodiada por agentes en el tribunal, estaba utilizando libremente su celular y mantenía comunicación con su madre." A la Apelante se le realizo una vista para asegurar su comparecencia como testigo material, pero se le determino causa para arresto al amparo de la Regla 238 de Procedimiento Criminal imponiéndole una fianza de $50,000.

La Apelante formulo los siguientes señalamientos de errores (1) la detención realizada por los agentes del orden público fue un arresto ilegal y (2) se le violó el debido proceso de ley, debido a que el Estado invirtió los procesos en haber realizado un arresto primero sin antes haber una orden judicial por parte del Tribunal según la Regla 238 de Procedimiento Criminal, *supra*.

A nuestro entender, este caso se convirtió en académico debido a que la Apelante fue encontrada incursa en desacato y se le impuso una pena de seis (6) meses, en la Vista Preliminar en la que fungiría como testigo realizada el 10 de abril de 2026. Lo que sin duda torna la controversia en un asunto académico. Tampoco estamos ante alguna de las excepciones a la doctrina de academicidad que permitiría que nos expresáramos sobre el recurso en los méritos. Ciertamente la controversia no es una cuestión recurrente o susceptible de volver a ocurrir, el uso de la regla 238 de Procedimiento Criminal es extremadamente inusual, siendo la regla un mecanismo de emergencia. Tampoco estamos ante una actuación del demandado en donde este

haya cambiado su conducta sin visos de permanencia. Ahora bien, sobre las consecuencias colaterales la apelante sostiene que, de este tribunal resolver el asunto en los méritos y atender la controversia mediante un resultado favorable para esta "le brindaría a esta la oportunidad de levantar defensas de efectos colaterales en el caso de Desacato Criminal, resuelto por el tribunal de forma sumaria. Esto mediante la Regla 194 de Procedimiento Criminal relacionada a reconsideración de la sentencia, reconsideración del término de sentencia y/o Regla 192.1 (1 y 2) de Procedimiento Criminal." La sola alegación de los mecanismos procesales que tendría como alternativa la apelante para cuestionar su convicción no es suficiente para derrotar, en este caso, los principios de academicidad.

Aún, cuando este tribunal concluyera que a la apelante se le violó el debido proceso de ley, la solución sería ficticia. A la Apelante se le encontró incursa en desacato en la Vista Preliminar por su conducta ante el foro y se le impuso una pena de seis (6) meses a ser cumplidos en la cárcel. En el supuesto que resolviéramos que el Estado efectuó un arresto ilegal basándose en la Regla 238 de Procedimiento Criminal, el desacato impuesto persistiría como conducta delictiva. Las consecuencias colaterales de la convicción por desacato siempre subsistirían pues son independientes de la reclusión conforme la Regla 238, supra. Por tal razón y en ausencia de la aplicación de alguna de las excepciones que nos permita evadir la academicidad, desestimamos el recurso por haberse tornado la controversia académica.

V

Por los fundamentos antes expuestos, se desestima el Recurso de Apelación por ser uno académico.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Pérez Ocasio concurre con la decisión

por entender que al resolverse la controversia ante el foro de instancia, al amparo de la Regla 238 de Procedimiento Criminal, 34 LPRA Ap.II, el asunto se tornó finalmente en académico.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones